[Cite as *Sheridan v. Sheridan*, 2012-Ohio-4271.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97325

---

# CHRISTINE SHERIDAN, ET AL.

### PLAINTIFFS-APPELLEES

### vs.

# KEVIN M. SHERIDAN, ET AL.

### DEFENDANTS-APPELLANTS

---

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-690440

**BEFORE:** Sweeney, P.J., Rocco, J., and Keough, J.

**RELEASED AND JOURNALIZED:** September 20, 2012

**ATTORNEYS FOR APPELLANTS**

John J. Wargo, Jr., Esq.
Jack P. Mills, Jr., Esq.
Wargo & Wargo
30 Park Drive
P.O. Box 332
Berea, Ohio 44017

**ATTORNEYS FOR APPELLEES**

James M. Hungerford, Esq.
James M. Hungerford Co., L.P.A.
2424 Broadview Road
Cleveland, Ohio 44109

John G. Farnan, Esq.
Shawn W. Maestle, Esq.
Amy K. Schermer, Esq.
Weston Hurd
1301 East Ninth Street
Suite 1900
Cleveland, Ohio 44114

Gregory B. Rowinski, Esq.
Assistant County Prosecutor
Ninth Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

Donn D. Rosenblum, Esq.
Ohio Attorney General's Office
Collections Enforcement Section
150 East Gay Street, 21st Floor
Columbus, Ohio 43215

(Continued)

**ATTORNEYS FOR APPELLEES**

Scott E. Collister, Esq.
Pamela S. Petas, Esq.
Gerner & Kearns Co., L.P.A.
215 West Ninth Street
Cincinnati, Ohio 45202

John F. Hersch, Esq.
8536 Crow Drive, Suite 240
Macedonia, Ohio 44056

Matthew H. Hallett, Esq.
Smith & Smith
110 Moore Road
P.O. Box 210
Avon Lake, Ohio 44012-0210

Christopher J. Shellito, Esq.
5510 Pearl Road, Suite 300
Parma, Ohio 44129

JAMES J. SWEENEY, P.J.:

{¶1} This dispute involves real property located in Parma, Ohio[1] and, in part, seeks the resolution of title and mortgage issues. Plaintiff-Appellee-Cross-Appellant Christine M. Sheridan[2] commenced the action against her spouse and now ex-husband, Kevin Sheridan, among several other defendants. Christine Sheridan filed an action to quiet title and sought an order canceling an open-ended mortgage held by defendant Equity Trust Company Custodian FBO Eric Lundberg[3] IRA.[4] The Equity Trust Mortgage, dated February 2, 2007, was secured by the Property and bears signatures of both "Kevin Sheridan" and "Christine Sheridan"; which were notarized by "Denise M. Roldan" of defendant Land Title Group, LLC.

{¶2} Defendant, Eric Lundberg, asserted a counterclaim on behalf of defendant Equity Trust against defendant Kevin M. Sheridan, in Kevin's individual capacity and in his capacity as "Co-Trustee of the Sheridan Family Trust Dated August 1, 2002." The counterclaim sought an order of foreclosure on the Equity Trust Mortgage, as well as a Promissory Note executed by Kevin Sheridan on February 2, 2007, in favor of Equity

---

[1]Specifically, 7777 East Linden Lane, Parma, Ohio 44130, permanent parcel number 457-18-068 (referred to in this opinion as the "Property").

[2]Both in her individual capacity and in her capacity as "Co-Trustee" of the Sheridan Family Trust dated August 1, 2002.

[3]Eric Lundberg and his wife Ericka Lundberg are also parties in this case.

[4] Referred to in this opinion as the "Equity Trust Mortgage."

Trust Company Custodian FBO Eric Lundberg IRA (the "Note") in the amount of $204,000.00, plus interest and penalties. The counterclaim also advanced claims for unjust enrichment and fraud against both Kevin and Christine Sheridan, which claims are not at issue in this appeal.

{¶3} In July 2009, Christine Sheridan, individually and as Co-Trustee, filed an amended complaint. In response, Eric Lundberg filed a counterclaim and cross-claims for foreclosure, unjust enrichment, and fraud.

{¶4} In December 2009, Eric Lundberg filed a Third Party Complaint against Land Title Group, LLC asserting claims of negligence and fraud related to its alleged failure to provide proper proof of title in preparation of the Note and Equity Trust Mortgage. In responding, Land Title asserted a counterclaim against Christine Sheridan and Kevin Sheridan for indemnification.

{¶5} On March 22, 2010, Christine Sheridan filed various motions, including one for default judgment against Equity Trust and another for judgment on the pleadings or for summary judgment.

{¶6} Defendants-appellants Eric and Ericka Lundberg appeal various interlocutory rulings of the trial court as does plaintiff-appellee-cross-appellant, Christine Sheridan, which the trial court certified as being final, with no just reason for delay.[5] For the reasons that follow, we affirm in part and reverse in part.

---

[5]The cross-appeal filed by Michael A. Robusto and UAW-GM Legal Services Plan has been dismissed by voluntary agreement among Christine Sheridan, individually and as Trustee, Michael Robusto, and the UAW-GM Legal Services Plan. Accordingly, the Robusto/UAW cross-appeal is moot as these parties agree

**{¶7}** There are multiple parties and multiple claims in this case, some of which are still pending before the trial court. Accordingly, our jurisdiction is limited to deciding only those issues that involve final, appealable orders. The only orders that the trial court has certified as being final, with "no just reason for delay," pertain to its disposition of the parties' summary judgment motions.

## A. Lundberg's Appeal.

**{¶8}** Lundberg identifies four assignments of error for review as follows:

1. The trial court erred in granting the subject motion for summary judgment of Land Title Group, LLC.

2. The trial court erred in granting the subject motion for summary judgment of Michael A. Robusto and UAW-GM Legal Services Plan.

3. The trial court erred in finding that "Lundberg acted [sic] an agent for Equity Trust with apparent authority to execute the release."

4. The trial court erred in finding that "the Lundberg lien was validly released, and the mortgage on the property recorded as instrument number 200702201238 is cancelled."

**{¶9}** However, the substance of Lundberg's brief presents the following arguments in this order: (A) Lundberg did not have apparent authority to release the Equity Trust

---

that the trial court properly awarded Robusto/UAW summary judgment on Christine Sheridan's legal malpractice claim against them because it was barred by expiration of the statute of limitations. Correspondingly, Christine Sheridan's cross-appeal, which challenged that particular ruling, is also moot. Christine Sheridan, however, reserved her right to challenge another aspect of the trial court's order, specifically with reference to the validity of certain documents purporting to release a mortgage lien, as is addressed more fully in the body of the opinion.

Mortgage on the Property; (B) the alleged release lacked the necessary consideration required to make it a valid contract; and (C) Land Title should be found liable for its acts or omissions relating to an alleged fraudulent notarization on the Equity Trust Mortgage.

## B. Christine Sheridan's Cross-Appeal.

{¶10} Christine Sheridan's cross-appeal identifies six assignments of error; however, assignment of error five was rendered moot by the voluntary agreement between her and the Robusto/UAW-GM Legal Services Plan Defendants/Appellees/Cross-Appellants. Her remaining assignments of error allege:

1. The trial court erred in its journal entry of May 25, 2010 in denying Christine E. Sheridan, Co-Trustee of the Sheridan Family Trust and Christine E. Sheridan a.k.a. Christine Sheridan's Motion for Judgment on the Pleadings or for Summary Judgment.

2. The trial court erred in its journal entry of May 25, 2010 granting Eric Lundberg and Ericka Lundberg [sic] Motion for Summary Judgment.

3. The trial court erred in its journal entry of August 24, 2011 denying Christine E. Sheridan, Co-Trustee of the Sheridan Family Trust and Christine E. Sheridan a.k.a. Christine Sheridan's Motion for Reconsideration of Summary Judgment.

4. The trial court erred in its journal entry of August 24, 2011 in granting the Motion of Land Title Group, LLC to Strike the Affidavits of Christine E. Sheridan a.k.a. Christine Sheridan, including the affidavit attached in support of Christine E. Sheridan, Co-Trustee of the Sheridan Family Trust and Christine E. Sheridan a.k.a. Christine Sheridan's Brief in Opposition to Land Title Group, LLC's Motion for Summary Judgment, along with the associated portions of Christine E. Sheridan, Co-Trustee of the Sheridan Family Trust and Christine E. Sheridan a.k.a. Christine Sheridan's Briefs relying upon these affidavits and/or portions thereof.

6. The trial court erred in its journal entry of September 7, 2011 in granting Land Title Group, LLC's Motion for Summary Judgment but excluding that portion thereof which held Land Title's Motion for Summary Judgment on its counterclaim for indemnification against Christine Sheridan and Kevin

Sheridan is moot and that it is not applicable.

{¶11} The substance of Christine Sheridan's cross-appeal presents these issues: (A) whether the trial court correctly found that Lundberg released the lien and Equity Trust Mortgage on the Property, thereby extinguishing Lundberg's counterclaims for foreclosure; (B) whether the trial court erred by finding Kevin Sheridan owns a half-interest in the Sheridan Property as a matter of law and that the unrecorded trust is ineffective to defeat Lundberg's lien as a subsequent bona fide purchaser who took an interest in the property with no knowledge of the trust instrument; and (C) whether the trial court erred by striking Christine Sheridan's entire affidavit and by granting summary judgment in favor of Land Title on her claims against it.

**C. Kevin Sheridan.**

{¶12} Kevin Sheridan filed a responsive brief to Lundberg's appellate brief and maintains that the trial court correctly dismissed Lundberg's foreclosure claims because, Kevin asserts, Lundberg released any interest he had in Equity Trust's Mortgage on the Sheridan property. Alternatively, Kevin argues that the release was an enforceable contract between Lundberg and him. Specifically, he argues that the release was supported by valid consideration, that being "maintaining the business relationship between the parties and avoiding interferences of that relationship by [Christine Sheridan]."

{¶13} In addition to responding to Kevin's contentions, Lundberg asserts that Kevin is precluded from raising new errors for the first time at the appellate level, which could have been, but were not, presented to the trial court for disposition.

**D. Land Title.**

{¶14} Land Title responded to both Lundberg's appeal and Christine Sheridan's cross-appeal.

{¶15} With regard to Lundberg's appeal, it is Land Title's position that Lundberg cannot claim to have the authority/standing in his individual capacity to enforce the Equity Trust Mortgage and at the same time claim he lacks the authority to release it. In either case, Land Title submits Lundberg's claims against it fail based upon the following rationale: (a) If Lundberg can pursue and enforce the Equity Trust Mortgage, then his release of it should be upheld as being valid; or (b) If he has no authority to release the Equity Trust Mortgage and the release is invalid, then he does not have the standing or authority to foreclose on it. Based on that reasoning, Land Title argues that the claims against it fail for lack of proximate cause.

{¶16} With regard to Christine Sheridan, it is Land Title's position that she failed to present any admissible evidence in opposition to its motion for summary judgment on her claims against it. Land Title argues that the trial court properly exercised its discretion by striking her entire affidavit that she relied upon in opposition. Land Title further argues that the trial court properly found that Lundberg's release was valid and negated Christine Sheridan's ability to establish that the alleged fraudulent notarization proximately caused any injury. Land Title also indicates it was entitled to summary judgment as a matter of law on its counterclaim for indemnification pursuant to the "Accommodation Filing Agreement."

**I.     Summary Judgment Standard.**

{¶17} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶18} The burden is on the movant to show that no genuine issue of material fact exists. *Id.* Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.

{¶19} An appellate court reviews a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

## II. The Validity of the Lundberg Release.

{¶20} Lundberg asserts that the trial court erred by finding he had the apparent authority to release the mortgage held by Equity Trust. The other parties maintain that the

trial court correctly found that the release was valid to cancel the mortgage and, therefore, it properly entered summary judgment against Lundberg on his foreclosure claim.

{¶21} There is no dispute that Equity Trust Company Custodian FBO Eric Lundberg, IRA was designated as the "lender" on the mortgage note and the "mortgagee" on the open ended mortgage that was recorded with Cuyahoga County as document number 200702201238.

{¶22} On March 1, 2007, Eric Lundberg signed a release and there is no designation after his name or signature. The body of the release provides "the undersigned, Equity Trust Company Custodian FBO Eric Lundberg IRA #49550 * * * holder of that certain note * * * instrument number 200702201238." Although Eric Lundberg is the account holder on the subject IRA, he is not an agent of Equity Trust.

{¶23} As the account holder, Eric Lundberg directed Equity Trust, the custodian of his IRA account, to invest his IRA funds by giving them to Kevin Sheridan in exchange for the subject mortgage on the Sheridan's Property. The record contains evidence that other mortgages previously held by Equity Trust FBO Eric Lundberg were released by agents of Equity Trust and not Eric Lundberg.

{¶24} Eric Lundberg is not the lienholder/mortgagee. Equity Trust has not entered an appearance in this action. Christine Sheridan attempted to obtain a default judgment against Equity Trust, which Eric Lundberg opposed arguing he was the real party in interest.

**{¶25}** Although the parties reference it, the trial court's judgment that denied Christine Sheridan's motion for default judgment against Equity Trust is not before us in this interlocutory appeal of summary judgment orders.[6]

**{¶26}** The proper party to bring a foreclosure action is the party who holds the interest in the mortgage, i.e., the mortgagee, when the complaint is filed. *See Wells Fargo Bank, N.A. v. Jordan*, 8th Dist. No. 91675, 2009-Ohio-1092, ¶ 24 (holding that a bank that acquired an interest in the mortgage by an assignment made after the foreclosure complaint was filed lacked standing to maintain the action).[7] It logically follows that the only party or entity that can effectively release a mortgage is the mortgagee or someone acting as their agent.

> In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the

[6] Kevin Sheridan asserts that if Lundberg lacked authority to release the mortgage, then he also lacked standing to pursue foreclosure claims in his personal capacity. That issue was not raised or addressed by the trial court in the summary judgment proceedings that are before us on review. We are mindful that claims remain pending before the trial court and that this matter has not been entirely resolved despite this appeal. Given the procedural posture of this matter, we find it would be improvident to consider an error that could have been addressed and decided by the trial court in the orders being appealed but was not raised by the complaining party at that time. *See State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1966).

[7] The Ohio Supreme Court has certified a conflict between *Jordan* and other Ohio appellate court decisions on this issue in *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 129 Ohio St. 3d 1487, 2011-Ohio-5129, 954 N.E.2d 661, which has not been decided. In the meantime, we continue to adhere to the precedent of *Jordan* in this district.

agent possessed the necessary authority.

*Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 575 N.E.2d 817, syllabus (1991).

**{¶27}** Christine Sheridan argues that because Equity Trust is a passive custodian of a self-directed IRA for Lundberg's benefit, Eric Lundberg must be deemed to have apparent authority to release the mortgage (that was obtained using his IRA funds) in his individual capacity. While this argument makes logical sense, it glosses over the formalities of contract law. It cannot be ignored that the mortgage holder is Equity Trust, a distinct entity. By the clear terms of the contractual arrangement between Lundberg and Equity Trust, Lundberg only has the authority to direct Equity Trust as to investment directions concerning his IRA account. There has been no evidence offered that Eric Lundberg, acting in his individual capacity, could unilaterally invest or release liens secured from his IRA account without any involvement or knowledge of Equity Trust. There is no evidence presented that Equity Trust, the principal and holder of the mortgage, had any involvement whatsoever in the release of the subject mortgage or designated anyone to act as its agent in releasing it. Further, there are no written instructions from Lundberg to Equity Trust directing it to release the mortgage. Without evidence to support the first element necessary to establish the existence of apparent authority, the second element cannot be met.

**{¶28}** Additionally, Lundberg maintains the release is invalid because there was no consideration given for it. "It is axiomatic that courts, as a general rule, will not inquire into the adequacy of consideration once consideration is said to exist*." Rogers v.*

*Runfola & Assoc., Inc.*, 57 Ohio St.3d 5, 565 N.E.2d 540 (1990), citing *Judy v. Louderman*, 48 Ohio St. 562, 29 N.E. 181 (1891). However, the existence of some consideration is an essential element of establishing a valid contract. *Williams v. Ormsby*, 131 Ohio St. 3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 14 (holding "that merely moving into a home with another while engaging in a romantic relationship is not consideration for the formation of a contract."); *see also*, *Gaudio v. Harrington*, 8th Dist. No. 43814, 1982 LEXIS 13512 (July 29, 1982).

{¶29} No one disputes that Kevin Sheridan received money from Eric Lundberg's IRA account and that Kevin executed the mortgage in exchange for it. There is evidence in the record, including Kevin Sheridan's testimony, that he never paid off the mortgage; nor did he provide anything else of value in exchange for a release of the mortgage lien except perhaps the possibility of an ongoing business relationship. On appeal, Kevin Sheridan maintains that the consideration consisted of maintaining a business relationship and avoiding interference of that relationship by Christine Sheridan. Kevin Sheridan testified that he and Lundberg were trying to work something out. He also testified that before they could, Christine Sheridan filed the quiet title action, which caused Eric to file his claims in an effort to protect his interests. Eric Lundberg denies that he received any consideration. There is just not enough evidence in this record to establish as a matter of law that there was consideration exchanged for the release.

{¶30} Based on this record, there are genuine issues of material fact as to the validity of the release for the reasons stated. Summary judgment on Lundberg's claims for foreclosure should not have been granted on the basis that the release was valid.

**II. The Accommodation Filing by Land Title.**

**{¶31}** Claims were advanced against Land Title asserting that their agent fraudulently or negligently notarized the Equity Trust Mortgage. Specifically, Christine Sheridan claims she never signed the Equity Trust Mortgage, nor gave Kevin permission to do so on her behalf. Kevin Sheridan admits that he signed her name but alleges to have done so, as he did on numerous other occasions, with her express permission. Christine Sheridan's testimony is inconsistent in some respects but she consistently testified that she signed some documents in this record but not others. In any case, it is clearly established that the Sheridans operated a real estate investment business that required them to sign a number of legal documents. They developed a business relationship with Land Title and the company's agents were familiar with the couple.

**{¶32}** Christine Sheridan eventually turned the operation of the real estate business over to Kevin Sheridan entirely because she no longer wanted to have anything to do with it. The record contains a limited power of attorney from Christine Sheridan authorizing Kevin to act as her attorney in fact with regard to real estate matters, dated January 1, 2007.[8] Land Title's representative testified that she did not recall relying on the limited power of attorney and had witnessed Christine's signature on the subject mortgage.

**{¶33}** Before granting summary judgment in Land Title's favor on Christine Sheridan's claims against it, the trial court granted Land Title's motion to strike her

---

[8] Christine initially testified that she did sign the limited power of attorney. At a later deposition, Christine changed her testimony and proposed her theory that someone had "grafted" her signature on the document.

affidavit that was attached to her brief in opposition and the portions of her brief that relied upon it. Christine asserts, as part of her appeal, that the trial court erred by striking the entire affidavit when it should have only stricken parts of it.

{¶34} We review the court's decision to strike Christine's affidavit by applying the abuse of discretion standard. *Cleveland Clinic Found. v. Commerce Group Benefits, Inc.*, 8th Dist. No. 79907, 2002-Ohio-1414.

{¶35} "[S]tatements contained in affidavits must be based on personal knowledge and cannot be legal conclusions." *Brannon v. Rinzler*, 77 Ohio App.3d 749, 756, 603 N.E.2d 1049 (2d Dist. 1991), citing *State v. Licsak*, 41 Ohio App.2d 165, 169, 324 N.E.2d 589 (10th Dist. 1974). "Personal knowledge is defined as, 'knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay * * *.'" *Gottlieb & Sons v. Hanover Ins. Co.,* 8th Dist. No. 64559, 1994 Ohio LEXIS 1682 (Apr. 21, 1994), quoting *Brannon,* 77 Ohio App.3d at 756 (other citations omitted).

{¶36} Christine's affidavit contains both legal conclusions and averments that are not based on her personal knowledge. Therefore, the trial court did not err by striking those portions. Even if the remaining portions are considered, Land Title was still entitled to summary judgment in its favor.

{¶37} There is an undated document in the record from Land Title with signatures of both Christine and Kevin Sheridan acknowledging that Land Title was performing an "accommodation filing " and no other service with regard to filing the mortgage deed and, whereby, Kevin and Christine agreed to defend and indemnify Land

Title regarding any claims concerning the mortgage deed. There is no dispute that Kevin Sheridan executed the mortgage that he personally delivered to Land Title. Further, no one has asserted that Land Title improperly notarized his signature. Consequently, there is no factual dispute concerning Kevin's assumption of liability and agreement to indemnify Land Title for any irregularities concerning the mortgage deed, including whether he had Christine's permission to sign her name on it.

{¶38} There are questions of fact concerning the notarization of Christine's signature; however, the trial court correctly entered judgment in favor of Land Title on the claims against it because there is no factual dispute that Kevin agreed to indemnify Land Title from any claims related to the mortgage deed.

## III. Title to the Subject Property.

{¶39} Christine Sheridan asserts that Sheridan Family Trust was the sole owner of the Property at the time Kevin Sheridan executed the mortgage deed. The trial court, however, found that Kevin Sheridan owned an individual half-interest as a matter of law.

{¶40} The plain language of the quitclaim deed transferred the Property to "Kevin M. Sheridan and Christine E. Sheridan Trustee of the Sheridan Family Trust dated August 1, 2002." The quitclaim deed was recorded but the Trust was not.[9]

{¶41} Christine asserts that notwithstanding the language of the quitclaim deed, the record evidence establishes as a matter of law that she and Kevin intended to transfer all of their interest in the Property into the Sheridan Family Trust. Kevin Sheridan's

---

[9] Third parties who reviewed the quitclaim deed had no notice of the Trust terms that defined the co-Trustees as "Trustee" because the Trust was not filed.

testimony, considered as a whole, does not definitively concede this point. His testimony establishes that he engaged in many transactions without fully comprehending or understanding what he was doing, including his testimony concerning the execution of the couple's estate planning documents. Further, Christine Sheridan submitted into evidence her expert witness's opinion that Kevin M. Sheridan received an individual interest in the real estate property because the quitclaim deed did not indicate that he is a Trustee. Her expert opined that the percentage of Kevin's individual interest is a question of fact. Accordingly, the trial court did not err by finding that Kevin M. Sheridan holds at least legal title to the Property in his individual capacity.

{¶42} Where a deed is silent, there is a rebuttable presumption that the parties took equal interests in the property. *Bryan v. Looker*, 94 Ohio App.3d 228, 231, 640 N.E.2d 590 (3d Dist.1994). Because there is a genuine issue of material fact as to whether the parties intended for Kevin M. Sheridan to retain any individual interest in the Property, the percentage of his ownership interest remains a question of fact. Christine Sheridan can present evidence to rebut the presumption of his percentage of ownership interest in the Property to the trier of fact.

{¶43} For the foregoing reasons, the trial court's judgment dismissing Lundberg's claims based on its finding that the release was valid and its finding that Kevin Sheridan owned a half-interest in the Property as a matter of law are reversed. The judgments are affirmed in all other respects. This matter is remanded to the trial court for further proceedings.

It is ordered that appellees and appellants split the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

JAMES J. SWEENEY, PRESIDING JUDGE

KENNETH A. ROCCO, J., and
KATHLEEN ANN KEOUGH, J., CONCUR