OPINION
{¶ 1} Appellant, Kenneth L. Alexander, appeals from the Carroll County Court of Common Pleas' April 30, 2003, Judgment Entry sentencing him to three consecutive eight-year prison terms and declaring him a sexual predator. Appellant was found guilty of three counts of rape in violation of R.C. § 2907.02(A)(1)(b), firstdegree felonies. All three offenses involved the same five-year-old girl.
 {¶ 2} The victim's mother was Appellant's live-in girlfriend, who was in the midst of a custody battle with the victim's father. (Trial Tr. pp. 201-203.) The child was predominantly in Appellant's care for three months during her mother's incarceration from October, 2001, through January of 2002. (Trial Tr. p. 198.) The rapes were alleged to have occurred during this period of time.
 {¶ 3} Appellant's jury trial took place on April 14 and 15, 2003. The jury returned guilty verdicts as to all three rape counts. Following sentencing and his designation as a sexual predator, he filed a timely notice of appeal with this Court.
 {¶ 4} Based on the record before us and our review of the relevant law, we determine that the trial court violated Appellant's Sixth Amendment right to a public trial. The trial court erred when the courtroom was closed during trial without the trial court first making the requisite findings. Thus, Appellant's convictions must be reversed and this matter remanded for retrial.
 {¶ 5} Appellant asserts seven assignments of error on appeal. We will address Appellant's third assignment of error first. In this assignment he alleges:
 {¶ 6} "The trial court denied appellant his right to a public trial as guaranteed by the Sixth Amendment of the United States Constitution and Sections 10 and 16 of the Ohio Constitution by closing the courtroom during the alleged victim's competency hearing and trial testimony"
 {¶ 7} Criminal trials generally must be open to the public and the press. Richmond Newspapers, Inc. v. Virginia (1980),448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973. The Sixth Amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."
 {¶ 8} Further, the Ohio Const. Art. I, § 16 provides in part, "[a]ll courts shall be open[,]" and Ohio Const. Art. I, § 10
provides that the accused will have the right, "to meet the witnesses face to face * * * and a speedy public trial * * *." A public trial ensures that the judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury. Waller v. Georgia (1984), 467 U.S. 39,47, 104 S.Ct. 2210, 81 L.Ed.3d 31 citing In re Oliver (1948),333 U.S. 257, 270, 68 S.Ct. 499, 92 L.Ed. 682.
 {¶ 9} However, the right to an open courtroom is not absolute, and may be overridden by a more dominant interest. Id.
 {¶ 10} In the instant matter, the courtroom was first closed to the public during the victim's competency hearing. The record reflects that Appellant and the respective families were removed from the courtroom during this hearing. (Competency Hearing Tr. p. 2.)
 {¶ 11} Notwithstanding a defendant's right to an open courtroom, Appellant's trial counsel stipulated that the courtroom could be closed during the competency hearing. (Competency Hearing Tr. p. 2.)
 {¶ 12} The doctrine of invited error precludes a party from benefiting from an error that that party induced the trial court to make. State v. Cassano, 96 Ohio St.3d 94, 772 N.E.2d 81,2002-Ohio-3751, at ¶ 64; State v. Bey (1999),85 Ohio St.3d 487, 493, 709 N.E.2d 484, cert. denied (1999), 528 U.S. 1049,120 S.Ct. 587, 145 L.Ed.2d 488. Since Appellant's counsel stipulated to closing the courtroom during the competency hearing, Appellant's right to assert this error on appeal is waived.
 {¶ 13} Appellant's counsel, however, did not stipulate to closing the courtroom during Appellant's trial. The courtroom was closed to the public during the victim's testimony at Appellant's trial. (Trial Tr. p. 105.) Appellant's trial counsel objected to this closure, but his objection was overruled on the basis ofState v. Workman (1984), 14 Ohio App.3d 385, 471 N.E.2d 853. (Trial Tr. p. 105.)
 {¶ 14} "`A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim. Among the factors to be weighed are the minor victim's age, psychological maturity, and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives.'" Workman, 14 Ohio App.3d 385, 389,471 N.E.2d 853, citing Globe Newspaper Co. v. Superior Court for the Cty.of Norfolk (1982), 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248.
 {¶ 15} Workman held that the trial court did not abuse its discretion in closing the courtroom during the minor victims' testimony. Id. That court noted that the victims were very nervous and soft-spoken, and the purpose of closing the courtroom was to eliminate excess noise and to keep the witnesses from additional embarrassment. Id. As such, it concluded that the standards set forth in Globe, supra, were met and that there was no resulting prejudice to the defendant. Id.
 {¶ 16} The facts herein are very similar to those inWorkman. The child victim here, like the victims in Workman,
was a very young girl. It is undisputed that the victim was six-years-old at the time of her testimony and that the nature of her testimony and the alleged offenses were sensitive. (Trial Tr. pp. 112-155.) Further, both the trial judges in Workman and the instant matter closed the trial to the public during only the minor witnesses' testimony.
 {¶ 17} In another factually similar case, the Sixth Appellate District concluded that the defendant's Sixth Amendment right to a public trial was not absolute and that it was overcome by the overriding interest of the personal dignity of a witness. Statev. Heffner (Sept. 22, 2000), 6th Dist. No. L-99-1006, 2, citingWaller, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.3d 31; UnitedStates ex rel. Latimore v. Sielaff (C.A.7, 1977), 561 F.2d 691,694-695. Based on the tender age of the witness and the nature of the crime involved, i.e., rape, Heffner found no error in clearing the courtroom during the minor witness' testimony. Id. at 2.
 {¶ 18} Notwithstanding the similarities between Workman,Heffner, and the instant matter, there is one major distinction between the three situations. Unlike the prior cases, the trial court in the instant matter failed to identify any factors on the record in support of his decision to clear the courtroom during the victim's testimony. The sole reference of record provided by the trial court is the citation to Workman, infra.
 {¶ 19} "`The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. * * *'" State v. Unger (1986),28 Ohio St.3d 418, 421, 504 N.E.2d 37, 28 O.B.R. 472, quotingPress-Enterprise Co. v. Superior Court (1984), 464 U.S. 501,104 S.Ct. 819, 78 L.Ed.2d 629.
 {¶ 20} Once counsel objects to a court's decision to close the courtroom during trial, the Sixth Amendment requires application of a four-prong test as set forth in Waller. Statev. Rector, 7th Dist. No. 01 AP 758, 2003-Ohio-5438; Waller,467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.3d 31. First, the party seeking to close the trial or some portion of it must assert an overriding interest. Second, any closure must be narrowly tailored to protect that interest. Third, the trial court must consider reasonable alternatives to closing the courtroom. Finally, the court must make findings on the record adequate to support the closure. Id.
 {¶ 21} The prosecution in the instant matter never set forth any overriding interests in support of his request to close the courtroom. (Trial Tr. p. 105.) Instead, the prosecutor merely remarked that the court had previously closed the courtroom in similar cases at the time the victims entered the courtroom. (Trial Tr. p. 105.) It should be noted that the record suggests that there was an off-the-record discussion at this point, but the contents of this discussion are not memorialized in any way. Thus, the first Waller prong was not satisfied here since the State of Ohio never advanced an overriding interest in closure.
 {¶ 22} We note that the trial court's closure only during the victim's trial testimony may have been sufficiently limited to protect the minor witness' interests. Unger, 28 Ohio St.3d 418,504 N.E.2d 37, 28 O.B.R. 472. However, the trial court failed to first make any findings on the record to support partial closure of the courtroom. The trial court noted the Appellant's objection for the record and succinctly overruled it based on Workman,
supra. (Trial Tr. p. 105.) Thus, on review we cannot adequately assess whether this closure was sufficiently limited to protect the unidentified interest. Based on the record, we cannot say that the second Waller prong was met.
 {¶ 23} Third, based on the record before us, the trial court apparently never considered any alternatives to closing the courtroom.
 {¶ 24} Finally, the fourth Waller prong was also unsatisfied. As earlier discussed, no findings appear in support of the decision to close the courtroom during the victim's testimony. (Trial Tr. p. 105.)
 {¶ 25} The lack of a record to support closing the courtroom during the victim's testimony leaves this Court with no alternative but to find that the trial court erred in closing the courtroom. Rector, 7th Dist. No. 01 AP 758, 2003-Ohio-5438;Waller, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.3d 31.
 {¶ 26} Appellant also claims that the trial court's decision to close the courtroom from the public without the requisite findings constitutes structural error, and therefore he does not have to demonstrate resulting prejudice.
 {¶ 27} "Structural error is characterized by the `entire conduct of the trial from beginning to end [being] obviously affected * * *.' For instance, total deprivation of the right to counsel throughout the trial has been said to affect the entire trial structurally. * * * Structural error is a constitutional deprivation which affects the framework of the whole trial rather than simply an error in the trial process itself." Id. at ¶ 11, citing Arizona v. Fulminente (1991), 499 U.S. 270, 309-310,111 S.Ct. 1246, 113 L.Ed.2d 302.
 {¶ 28} This Court has recently addressed a similar claim of structural error in Rector, supra. The defendant in Rector
was facing rape charges stemming from allegations made by his seven-year-old stepdaughter. Id. He relied on many of the same cases and rationales as Appellant, here. This Court distinguishedRector from Waller, supra, by noting that Waller dealt with the exclusion of the public from the entire course of a suppression hearing, and the defendant in Waller specifically objected to the closure. Rector at ¶ 9-10. Rector, however, involved only closure of the trial during the minor's testimony, and the defense did not object to the closure of this portion of the hearing. Id. This Court in Rector found no structural error since a structural error, which infects the whole trial process, "does not fit a case where the courtroom is closed for one witness and where the defendant fails to object." Id. at ¶ 11.
 {¶ 29} As in Rector, supra, the courtroom was closed in the instant cause only during the child victim's testimony. However, unlike Rector, supra, the courtroom was closed over counsel's objection. Further, the current matter involves the trial of Appellant, directly. In Rector, closure involved a pretrial suppression hearing and not the trial itself.
 {¶ 30} Appellant asserts that closure added legitimacy to the child's testimony and bolstered her role as a victim. A, "requirement that prejudice be shown `would in most cases deprive [the defendant] of the [public-trial] guarantee, for it would be difficult to envisage a case in which he would have evidence available of specific injury.'" Waller, 467 U.S. 39, 50,104 S.Ct. 2210, 81 L.Ed.3d 31 quoting United States ex rel. Bennetv. Rundle (1969), 419 F.2d 599, 608.
 {¶ 31} The victim's testimony was undoubtedly the most critical evidence at trial. Absent the requisite findings after Appellant's objection to closing the courtroom, it does appear that this constitutional deprivation affected his trial's structure in this matter. Absent appropriate findings pursuant toWorkman, supra, we must hold that structural error occurred.
 {¶ 32} Based on the above, Appellant's third assignment of error is sustained in part, and we hereby reverse Appellant's convictions and remand this matter for a new trial. On retrial, the trial court must make sufficient findings on the record before it can close the courtroom during the victim's testimony.
 {¶ 33} An appellate court must rule on all of the issues before it unless the others are moot. App.R. 12(A)(1)(c). An issue is moot when a decision on that issue would not be beneficial to the parties. In re Bartlett (1958),108 Ohio App. 93, 98-99, 161 N.E.2d 76. Thus, we will examine each of Appellant's remaining assignments of error to determine whether these should be fully addressed.
 {¶ 34} Appellant's first assignment of error asserts:
 {¶ 35} "The trial court erred when it entered the judgment of conviction in the absence of sufficient evidence to establish penetration, contrary to the Fifth and Fourteenth Amendments of the United States Constitution and Article One Section Sixteen of the Ohio Constitution"
 {¶ 36} In most instances, when an appellant raises sufficiency of the evidence claims, these must be addressed even where the reviewing court is remanding on other grounds. Statev. Lovejoy (1997), 79 Ohio St.3d 440, 683 N.E.2d 1112. This protects an appellant against double jeopardy. However, as this Court has addressed in at least two post-Lovejoy matters, no double-jeopardy problem exists where the evidence we must review on sufficiency grounds is the identical evidence we have ruled was improperly submitted in the first place. As succinctly stated by Judge Vukovich on behalf of the Court in State v. Lane (Mar. 19, 1998), 7th Dist. No. 94 B 34, 6, where the appellant raised a blended manifest weight/sufficiency argument:
 {¶ 37} "For this court to engage in a `manifest weight' analysis would be an exercise in futility because the outcome of our analysis would turn on our reviewing the evidence presented to the trial court, namely the testimony of [the witness], which we concluded was tainted due to constitutional violations. Naturally, we cannot address whether the evidence presented was sufficient to sustain the conviction or whether the conviction was against the manifest weight of the evidence since we would have to consider the very testimony that we have determined was improperly proffered. Thus, pursuant to App.R. 12(A)(1)(c), we decline to address the merits of appellant's first assignment of error as it is moot."
 {¶ 38} See also State v. Lloyd, 7th Dist. No. 2001-CO-36, 2002-Ohio-3017, ¶ 77.
 {¶ 39} In fact, virtually all of our sister appellate districts faced with this situation post-Lovejoy have held that a sufficiency review will be moot where the evidence to be reviewed is the identical evidence the court has held was not properly submitted in the trial court. State v. Davis, 2nd Dist. No. 2002-CA-43, 2003-Ohio-4839, ¶ 112; State v. Halloway
(1998), 129 Ohio App.3d 790, 798, 719 N.E.2d 70; State v. McGee
(1998), 128 Ohio App.3d 541, 545, 715 N.E.2d 1175; State v.Cutlip, 9th Dist. No. 03CA0118-M, 2004-Ohio-2120, ¶ 19; Statev. Elkins, 5th Dist. No. 01-CAAA12073, 2002-Ohio-4051, ¶ 21;State v. Jett (Mar. 31, 1998), 11th Dist. No. 97-P-0023, 16.
 {¶ 40} Further, Appellant's so-called sufficiency of the evidence argument is really a blended argument. Appellant argues that in light of other errors allegedly committed, the child's testimony should be viewed in the light most favorable to the Appellant. In actuality, Appellant is arguing that the manifest weight of the evidence favors reversal in this matter. Of course, this type of argument does not raise doublejeopardy issues.
 {¶ 41} Regardless, based on our decision that the evidence Appellant relies on under his first assignment should not have been submitted to the trial court based on other error, this assignment is moot.
 {¶ 42} Appellant's second assignment of error states:
 {¶ 43} "The improper admission of other acts testimony deprived appellant of his right to due process of law under the Ohio and United States Constitutions"
 {¶ 44} Appellant raises seven allegations of ineffective assistance of counsel in his sixth assignment of error, which claims:
 {¶ 45} "Appellant was deprived of the effective assistance of counsel due to numerous errors and omissions which prejudiced appellant's trial"
 {¶ 46} Appellant claims in his seventh assignment of error:
 {¶ 47} "The trial court erred in refusing to appoint an expert to appellant and in finding appellant to be a sexual predator when the state failed to produce clear and convincing evidence to support such a finding"
 {¶ 48} Based on our conclusion in Appellant's third assigned error, we decline to address Appellant's second, sixth and seventh assignments of error as well. All of the issues raised by these assignments deal in some way with evidence presented or the lack thereof and of his prior counsel's actions at trial. All of these issues are moot due to the fact that Appellant will receive a new trial.
 {¶ 49} In Appellant's fourth assignment of error he claims:
 {¶ 50} "The trial court made numerous errors and omissions in the instructions to the jury. The errors deprived appellant of due process as guaranteed by the Ohio and United States Constitutions"
 {¶ 51} Under this assignment, Appellant claims that there are four alleged errors made by the trial court that either separately or cumulatively denied him due process of law. Because these involve claimed error on the part of the trial court and are likely to be at issue on retrial, we will address this fourth assignment of error.
 {¶ 52} First, Appellant claims that the trial court erred in providing the dictionary definition of penetration relative to Appellant's rape offenses. The trial judge stated: "[p]enetration simply means to pass into or to enter and however slight is sufficient to complete vaginal or anal intercourse." (Trial Tr. pp. 274-275.)
 {¶ 53} After Appellant's counsel objected to this instruction, the trial judge explained that he was giving this additional dictionary definition in light of the cross-examination of the doctor concerning what act constitutes penetration. (Trial Tr. pp. 246-247.)
 {¶ 54} R.C. § 2907.01(A) defines penetration as:
 {¶ 55} "* * * the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 56} The only difference in the definition given by the trial court concerns the addition of the words "to pass into" and "to enter."
 {¶ 57} Further, while Ohio Jury Instructions are routinely used in Ohio, they do not have to be blindly applied in all cases. State v. Burchfield (1993), 66 Ohio St.3d 261, 263,611 N.E.2d 819. The words "to pass into" and "to enter" are harmless since they simply state the commonly known definition of penetrate.
 {¶ 58} Appellant next asserts the trial court's jury instructions on vaginal, anal, and oral rape were incorrect because the prosecution only alleged vaginal rape in its opening statements to the jury. Since Appellant's counsel did not object to this jury instruction, it is governed by the plain error standard.
 {¶ 59} Appellant claims that the only appropriate instruction was that of sexual conduct by vaginal intercourse and that the court's definitions of all forms of rape effectively broadened the indictments against him.
 {¶ 60} However, the indictment does not specify or limit the forms of the charged rapes. (11/04/02 Indictment.) The indictment simply reflects that Appellant was charged with three counts of rape in violation of R.C. § 2907.02(A)(1)(b), codified as sexual conduct with a person under the age of thirteen. (11/04/02 Indictment.) R.C. § 2907.01(A) defines sexual conduct as:
 {¶ 61} "* * * vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex[.] * * * Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 62} This claim lacks merit because the state's failure to mention anal or oral intercourse in its opening statement does not preclude it from proving the charged offenses at trial. Appellant was convicted on the basis of the evidence provided at trial, evidence entirely consistent with the allegations in the charges filed against him.
 {¶ 63} Appellant next avers that the trial court erred when the court advised the jury that no corroboration of the victim's testimony was necessary. Appellant's trial counsel objected, arguing that it was a slanted instruction, tending to lend support to the victim's testimony. (Trial Tr. p. 248.)
 {¶ 64} The judge's statement to which Appellant objects is as follows:
 {¶ 65} "* * * There is nothing in the law which requires that an alleged rape victim's testimony be corroborated as a condition precedent to a conviction. If found credible, the victim's testimony alone is sufficient to sustain a conviction if it establishes the elements of rape beyond a reasonable doubt. * * *" (Trial Tr. pp. 275-276.)
 {¶ 66} Appellant argues that this instruction essentially states that the victim's testimony alone is sufficient for Appellant's conviction, but that Appellant's or another witness's testimony would not be sufficient to support Appellant's acquittal.
 {¶ 67} Appellant correctly states that a jury charge should be a, "plain, distinct and unambiguous statement of the law * * *." Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12,482 N.E.2d 583, 19 O.B.R. 8. However, the Marshall Court also stated that: "[a] charge ought not only be correct, but it should also be adapted to the case and so explicit as not to be misunderstood or misconstrued by the jury." Id.
 {¶ 68} Appellant asserts that OJI 405.20(4) sets forth the proper instruction on this issue:
 {¶ 69} "You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony of any witness. It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief."
 {¶ 70} However, Appellant fails to mention that the trial court did in fact provide the first two sentences of this credibility instruction. (Trial Tr. p. 271.)
 {¶ 71} Again, Ohio Jury Instructions do not have to be blindly applied in all cases. Burchfield, 66 Ohio St.3d 261,263, 611 N.E.2d 819. While this instruction relative to the victim's testimony does tend to reinforce the fact that her testimony alone is sufficient to support Appellant's convictions, it nonetheless is an accurate statement of the law. "[T]here is nothing in the law which requires that a rape victim's testimony be corroborated as a condition precedent to conviction." Statev. Nichols (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80. See also State v. Gingell (1982), 7 Ohio App.3d 364, 365, 7 O.B.R. 464, 455 N.E.2d 1066; State v. Love (1988), 49 Ohio App.3d 88,91, 550 N.E.2d 951.
 {¶ 72} Further, a reviewing court cannot examine the jury instructions piecemeal, but must instead examine them as a whole when trying to determine whether they were appropriate. Wozniakv. Wozniak (1993), 90 Ohio App.3d 400, 410, 629 N.E.2d 500. If the jury instructions in their entirety accurately reflect the applicable law to a case, "reversible error will not be found merely on the possibility that the jury may have been misled."Reitz v. Howlett (1995), 106 Ohio App.3d 409, 414,666 N.E.2d 296, citing Ohio Farmers Ins. Co. v. Cochran (1922),104 Ohio St. 427, 135 N.E. 537, 20 Ohio Law Rep. 16, 20 Ohio Law Rep. 17, syllabus paragraph six.
 {¶ 73} Upon reviewing the trial judge's jury instructions in their entirety, it is evident that the trial judge appropriately advised the jury as to the applicable laws, the burden of proof, and Appellant's presumption of innocence. As such, this assigned error lacks merit.
 {¶ 74} Appellant also claims that the trial court committed prejudicial error in giving the jury a copy of Appellant's indictment. Appellant's trial counsel did not object to this at trial; however, Appellant now asserts that his counsel's failure to do so constitutes plain error or the ineffective assistance of counsel.
 {¶ 75} Appellant claims that the trial court's act of providing the jurors with a copy of the indictment implied that it was evidence, causing confusion and prejudice.
 {¶ 76} In State v. Graven (1977), 52 Ohio St.2d 112,369 N.E.2d 1205, the Ohio Supreme Court, in construing R.C. § 2945.35
concerning the paperwork the jury may take to the jury room, held, "[t]he trial court has discretion in a criminal case to permit the jury to take the indictment to the jury room." Id. at syllabus.
 {¶ 77} Further, the trial judge in the instant cause specifically advised the jury that the indictment is not evidence. (Trial Tr. p. 270.)
 {¶ 78} Appellant's fourth assignment of error lacks merit in its entirety and is overruled.
 {¶ 79} Appellant's fifth assignment of error claims:
 {¶ 80} "The trial court erred in failing to hold a hearing on appellant's motions for inspection of the dhs file and for an independent psychological examination of the alleged victim. the trial court's errors deprived appellant of his rights to due process of law, to effectively confront and cross-examine the alleged victim, and his right to present a defense pursuant to the Ohio and United States Constitutions"
 {¶ 81} Appellant asserts that the trial court's failure to hold a hearing relative to his motion for inspection of the Department of Human Services ("DHS") file was prejudicial and in violation of his constitutional rights. Appellant sought an in camera inspection of the victim's DHS file, to look for information relative to possible prior rape allegations. (1/27/03 Motion for In Camera Inspection of DHS File.)
 {¶ 82} Thereafter, on March 31, 2003, Appellant's trial counsel filed a motion requesting the release of all exculpatory evidence in the state's possession, which was granted on April 2, 2003.
 {¶ 83} But for the January 27, 2003, Motion for In Camera Inspection of DHS File, there is no other specific reference to the DHS file or requests for this file on the record.
 {¶ 84} When a court does not explicitly rule on a motion, it is presumed that the court overruled that motion. Taylor v.Microdot, Inc. (1992), 79 Ohio App.3d 485, 493, 607 N.E.2d 855;Newman v. Al Castrucci Ford Sales, Inc. (1988),54 Ohio App.3d 166, 169, 561 N.E.2d 1001.
 {¶ 85} Nevertheless, the nature of the documents sought by Appellant's January 27, 2003, motion constitutes exculpatory material already subject to the trial court's disclosure orders. Had the state been in possession of prior allegations of a sexual nature by the victim, presumably they would have been subject to the trial court's April 2003, order requiring the release of all exculpatory evidence in the state's possession.
 {¶ 86} Further, this issue and an assessment of resulting prejudice cannot be fully examined on appeal since the contents of the DHS file are not before this Court. It is Appellant's duty to provide a record to this Court. Without including the file for the record, Appellant cannot demonstrate that the outcome of his trial would have clearly been different had the DHS file been disclosed. Crim.R. 52. Based on the foregoing, this argument lacks merit.
 {¶ 87} Appellant also asserts that the trial court failed to order an independent psychological examination of the child. Appellant asserts that her examination might have revealed that she made previous sexual assault accusations.
 {¶ 88} However, Appellant's motion seeking the victim's independent psychological examination was filed two weeks before trial on March 31, 2003. The trial judge overruled it as untimely via Crim.R. 12(D). (4/02/03, Motion Hearing Tr. pp. 3-5.)
 {¶ 89} Crim.R. 12(D), provides:
 {¶ 90} "All pretrial motions except as provided in Crim. R. 7(E) and 16(F) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. The court in the interest of justice may extend the time for making pretrial motions."
 {¶ 91} Pursuant to Crim.R. 12(D), a trial court's decision denying leave to file an untimely motion to suppress will not be disturbed on appeal absent an abuse of the trial court's discretion. State v. Karns (1992), 80 Ohio App.3d 199, 204,608 N.E.2d 1145. In order to find an abuse of discretion, the trial court's decision must be clearly unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 92} In the instant cause, Appellant was arraigned on November 14, 2002; his motion seeking the victim's examination was filed on March 31, 2003; and the matter went to trial on April 14, 2003. Although his motion was filed seven days prior to trial, it was not thirty-five days after his arraignment, as required by rule.
 {¶ 93} In addition to not timely filing the motion, the record also indicates that Appellant's trial counsel never requested leave to file the motion seeking the child's psychological examination.
 {¶ 94} Based on the foregoing, the trial court was well within its discretion in overruling Appellant's motion as untimely. Thus, his fifth assignment of error is overruled in its entirety.
 {¶ 95} In conclusion, we must reverse Appellant's convictions. The trial court's failure to satisfy the Waller,
supra, test violated Appellant's Sixth Amendment right to a public trial. While there was no error on the part of the court in its closure of the courtroom during the victim's competency hearing, in giving the relevant jury instructions or in the trial court's handling of the victim's DHS file, our decision as to the failure to make the requisite findings prior to closing the courtroom during trial mandates a retrial of this matter. All other assignments of error advanced by Appellant are moot, as retrial is necessary. This matter is hereby reversed in part and remanded to the trial court for further proceedings according to law and consistent with this Opinion.
Vukovich, J., concurs.
DeGenaro, J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion.